My name is Oliver Larson, I'm an attorney with the Minnesota Attorney General's Office. My clients are the Minnesota Department of Natural Resources and its officials who are the appellants here. I think what you have before you are three issues, two legal issues and then a third issue that's really a remedies issue, depending on the outcome of those two legal issues. So the two legal issues, the first one is whether Judge DeGroat is a proper defendant under an ex parte young theory for a suit brought by the DNR to challenge travel court jurisdiction. I noticed that the band was sort of not made part of this appeal or they weren't part of the caption. Has the State conceded that they're entitled to sovereign immunity? Is that correct? Correct. We've never taken a position that the band is not entitled to sovereign immunity. Our position is an affirmative defense. They never actually raised it. Judge Wright dismissed the response that we didn't appeal.  Okay. Thank you. So the first issue is whether Judge DeGroat is a proper defendant on ex parte young theory. The second issue is whether the travel court in fact lacks jurisdiction over DNR officials. And then the third issue, the practical issue is this. If you agree with the DNR on the first two legal issues, if you agree that Judge DeGroat is a proper defendant, if you agree that the travel court lacks jurisdiction, what is the appropriate remedy? What's the appropriate form of remand when you send this case back down to the district court? And what we've advocated for and what we think the right result here would be is that you remand it with direction to enter some form of an actual final judgment in this case. And we've cited you, the authority, for that, which is that when this court on an interlocutory basis considers and resolves a legal issue that is dispositive of the case, rather than sending it back down to the district court for further proceedings on an issue you've already resolved, you can simply direct that a final judgment be entered. So I'm going to discuss these three issues. The third issue, frankly, may be the most productive use of our time to the extent that you're considering other options. I'm happy to address them. But I do think that the time is right for a decision in this case that gives a final remedy to the DNR. On the, what I call the ex pro young Kodiak issue, look, we've briefed these issues to you, and I think they're briefed well. Kodiak is dispositive of this case. We've briefed why it's dispositive. The response from the appellee is that in an attempt to limit Kodiak to situations in which the tribal lawsuit concerns a matter of Federal law, the theory being that that's what creates ex parte young jurisdiction. That's incorrect for the reasons that we've briefed to you, which is the actual Federal question here is whether the tribal court is improperly exercising jurisdiction over nonmembers. And if it's improperly exercising jurisdiction over nonmembers, that is a Federal issue and a nonmember has a Federal right to come to a Federal court and get a determination that the tribal court lacks jurisdiction, and the appropriate vehicle for that is an ex parte young lawsuit directed to the judge. I'll give you one more case. One of the things we said in our brief is that we could cite you dozens of cases on this, and we could. We cited you two, the National Farmers case, which is the leading case out of the Supreme Court, and the Nord v. Kelly case, which is the leading case out of the Eighth Circuit. And notably, both of those cases involved tribal lawsuits that did not involve Federal questions. So that right there suggests that the distinction that the appellee is trying to make simply doesn't hold water. But I'll give you a third case. This one out of the Tenth Circuit. We've already cited to you. It's in the brief. We cited it just kind of in passing to point out that the Tenth Circuit came to the same conclusion. But the Crow v. Dunleavy case, it's 640 F. 3rd, 1140, again, it's in the briefing. It's an interesting case. When I was rereading it in preparation for this argument, they take on this exact argument that the appellee has raised. So in that case, there was a tribal judge who was sued. He went to the Tenth Circuit, and what he said is, the underlying claim is a tribal law claim, and therefore, I am not subject to ex parte young jurisdiction. The Tenth Circuit considered it, rejected the argument, rejected the argument for the exact reasons we have briefed. So if you want to see, you know, a fellow sister circuit, go through that analysis. You can read the Crow v. Dunleavy case, and it goes right through the same analysis. And the result is that Judge DeGroote is a proper defendant. Turning to, I guess, the merits of whether the tribal court actually has jurisdiction or not, I would start with the following observation. There are three independent reasons why the tribal court lacks jurisdiction, and sometimes I think that gets lost in the briefing, where the briefing gets boiled down to the idea that we're making an argument that the conduct's off-reservation, therefore, there's no jurisdiction. But there really are three different arguments. The first is sovereign immunity, the idea being that they're challenging State action through these official capacity lawsuits. The State has sovereign immunity. The second argument is that under Montana, the holding of Montana, the actual holding of Montana is that tribal courts lack jurisdiction generally over nonmembers. That's the actual holding. And then, and what you could actually characterize as dicta, it talks about what its exceptions are. And, of course, there's then a huge body of case law that discusses the exceptions. And when we think about Montana, we automatically start talking about the exceptions. But we really need to ground ourselves in what the holding of Montana is. And the holding is that tribal courts generally lack jurisdiction over nonmembers. And then if you read into the exceptions, the explicit language of that opinion is very, very clear about what it's talking about. It's saying that in certain limited circumstances, for conduct occurring on fee lands inside the reservation, there may be jurisdiction for tribal courts if the other conditions are met. Nothing, nothing in the Montana case can be read as extending tribal court jurisdiction to nonmembers off the reservation. And the Plains Road Commerce case, you know, further, you know, expounded upon that, had that same holding. And this court in both API and the Hornell matters came to the same conclusion. If the conduct isn't happening inside the reservation, you stop there, you don't talk about the exceptions, the general rule applies. What's the complaint of conduct in this case? The conduct, if you read through the complaint, is entirely off reservation. The gravamen is certainly about the Line 3 project and about the DNR issuing a dewatering permit associated with that. But there are also allegations about essentially violations of treaty rights of tribal members off the reservation as they are exercising use of property rights. So if they're off the reservation hunting or fishing or collecting wild rice, what they're saying is the state's not respecting the rights to do that under treaty. Again, those are off-reservation issues. So all the conduct that we're talking about here, and again, the gravamen is really about this water permit, is all occurring off the reservation. If we were to hold DNR has sovereign immunity in this situation, we don't need to reach the Montana question, do we? Correct. Sovereign immunity stands, and I guess that's what I was trying to say. There's three independents, and if you rule on sovereign immunity, that's the end of it. We don't need to get into Montana and the third issue being HIFS. And I think HIFS also you have to look at standing alone. You know, HIFS obviously comes after Montana. It discusses Montana, but it really establishes an independent rule that there's not jurisdiction in tribal courts over state officials, and then also that there's not tribal court jurisdiction over federal claims, both of those things. One last point before I move off of this, I'll just point out, look, the result here would not be any different if we were talking about two different states. So most recently, the Supreme Court in this term in a case called Mississippi v. Tennessee took up kind of a similar issue where Memphis, which is located in Tennessee, was pulling groundwater out. Mississippi claimed that that was impacting groundwater aquifers on its side of the border. It tried to initiate a federal district court lawsuit against Tennessee. It worked its way up to the Supreme Court, and ultimately the Supreme Court said, look, your exclusive remedy is to bring a claim against the actual state of Tennessee with original jurisdiction here in federal court in the Supreme Court. So we're not advocating for something that's different than what the result would be if we were dealing with the state of Wisconsin or the state of Iowa or the state of North Dakota. The same result would hold up. And again, there are remedies to the extent that the ban has actual valid claims, and I think there are some serious problems with some of the claims substantively, but they do have forms for them, either in state court or in federal court. The issue here is whether they can bring these claims in tribal court. So with that, go ahead. I'm just curious. You're saying their remedy would be an original jurisdiction case in the Supreme Court? No, because they're not a state. It wouldn't be that. But I think they're — first of all, when DNR, with respect to the groundwater permit, for example, if the ban felt that the — one of the things that the DNR has to determine in order to issue that groundwater permit is that it's not going to have adverse impacts on the environment. If the ban contests that, I think that's wrong. One remedy they have is to take a certiorari appeal to the Minnesota Court of Appeals. To the extent they think they have treaty rights that are being impacted, and I think there's probably some problems with that claim substantively, but their remedy would be an official capacity lawsuit in federal district court. So turning to the issue of remedies and why I think, you know, now really is the right time for this Court to issue a final judgment, in this case, I think there's probably two options that I think are probably the options that you should be considering, assuming that you agree with DNR's position on the law. One is to remand this back to the district court with instruction to reinstate the case. If you do that, what we're going to need — if you're going to have the district court then consider the merits of the claim, we're going to need some kind of preliminary relief in the interim while the federal case is proceeding in the district court to prevent what we've seen on three different occasions in the tribal court, which is the ban trying to tee up a motion for a preliminary injunction to have the DNR revoke the permit. So that's one option, is to send it back to the district court with a preliminary injunction directed to Judge DeGroote prohibiting any kind of litigation in the tribal court while the federal district court considers and resolves the issue. The other option, though, is that you can simply remand it with direction to enter a final judgment in this case. And you've done that. We've pointed to the cases in other situations, Sello Partnership versus Hatch, actually. Our office was the defendant in that case, where you've determined that there's a final dispositive legal issue in the case that disposes of the entire case. You remand with an instruction to enter a final judgment. Outside the briefing, again, I was rereading the cases. I would point your attention to the Hornell case. So the Hornell case is another Eighth Circuit case. This is the one in which a tribal lawsuit was filed challenging some breweries who were using the name Crazy Horse when selling malt liquor. And so the case started in tribal district court. There was then a parallel federal proceeding in which the breweries tried to get an injunction against tribal court proceedings. The district court in that case, the federal district court, entered an injunction, a partial injunction against any proceedings on the merits in the tribal district court. And it came up into this court on a preliminary injunction. So it was an interlocutory appeal, and the tribal parties were challenging the preliminary injunction. This court affirmed that the district court had reached the right conclusion, that the tribal court, in fact, lacked jurisdiction. But instead of remanding for further proceedings, what this court determined was that there was no need for further proceedings. You had resolved the core legal issue, which is that the band lacked jurisdiction over those defendants. And what you remanded with, then, was a direction to enter a permanent or, sorry, a final judgment declaring that the tribal court lacked jurisdiction. So the Hornell case is, for remedies purposes, I think, is very close to this procedural posture. It's right on point in terms of the remedy that we're asking for, with one caveat that I will concede. In the Hornell case, what this court determined is it was not necessary to put the tribal court under a permanent injunction. It was sufficient to remand the case for a final judgment with a declaration that the tribal court lacked jurisdiction. And I will tell you that the appellants in this case would be satisfied with this result. In some ways, that would be a better thing for this court to do. I mean, obviously, we prefer to avoid putting, you know, sister courts under injunctions if we can. One way the court can avoid that is if you reach the issue, decide that the tribal court lacks jurisdiction, you can remand this case with an instruction for a final judgment of a declaratory judgment that the tribal court lacks jurisdiction. You would not need to put Judge Chigrow under an injunction. The declaratory judgment would be sufficient for our purposes. So with that, unless you've got any questions, you know, I would probably reserve the rest of my time for rebuttal. Thank you, Mr. Larson. Mr. Plummer. Morning, Your Honors. May it please the Court. My name is Joe Plummer. I represent the White Earth Band and Judge DeGroote. My co-counsel is Mr. Frank Bebo, and also, I want to acknowledge my son, Riley Plummer, who did the lion's share of our brief. Certainly, we disagree with what the State's presentation, you know, what you just heard. This is a Montana II case. This is the second exception under the Montana case. The DNR's activities while off-reservation, very close off the reservation, impact the water table, doesn't respect borders. How do you get past Hicks before we get to Montana? Hicks had a very limited holding, and I think this Court, Your Honor, correctly decided that in the Kodiak case, that Hicks decided only that 1983 damages are not permissible for that State actor's activities in the tribal court. This is way different, Your Honor. We agree with the lower court that the district court should be affirmed because the Band and Judge DeGroote enjoy immunity from suit, and the tribal court needs to consider the facts and determine so in jurisdiction, just like this Court's decision in attorney's process investigations in the Second Fox case. This case is very similar. There's no requirement that the activities actually take place on the reservation. The focus of this Court in the API case, the attorney's process and investigation case, was on the impact of the conduct of the non-member actors in that case. The State of Minnesota Department of Natural Resources activities in this case, Your Honor, are very similar to that. What's at stake here, and the State has a hard time wrapping their head around, is that these are treaty-protected rights, treaty-protected rights that this Court has a long history of respecting. But I think the State's position would be, then, take the issue to federal district court, and you have a forum there to protect your treaty rights. Well, our primary cause of action in the tribal court, Your Honor, is the Rights of Tribal Law, specifically focused on the protection of wild rice, manoomin. And important, and that's a very fragile plant. It's integral to the Ojibwe culture. Water quantity and water quality are very important. And in this case, and you probably recall from the facts, that what happened was the DNR issued a dewatering permit for a pipeline, 500 million gallons. There's no meter on it, you know, it's not very accurately determined, but without notice to the tribe or consent or any type of consultation, the DNR increased that dewatering permit 10 times to 5 billion gallons. And it was in close proximity, I don't know whether you're familiar in the geography, I'll try to describe it for you, that's right near the headwaters of the Mississippi River. It's Lake Itasca. And it's a very wet area and it needed to be dewatered. And all of the meandering headwaters of the Mississippi were causing problems for the pipeline construction. And so that's why the dewatering permit was initially provided and it was increased tenfold. But as I said, Your Honor, the water doesn't respect the boundaries. The wider tribe's crown jewel, like covered in our brief, is Lower Rice Lake. Lower Rice Lake is in very close proximity to the boundary that was impacted by this dewatering permit. We call it the crown jewel. It's the largest continuously producing wild rice bed in the world. And it was negatively impacted by this. That non-member activity, regardless if it's the State Department of Natural Resources, caused damages, we don't know because the State won't let us have detailed information. And you're saying that Montana II, based on those facts, gives the tribal court jurisdiction? Correct, Your Honor. This is a Montana II case because the activities of the non-members, even though they happened off-reservation, directly impacted the growth of that treaty-protected resource on reservation. This year, people couldn't get in or out of the boat. What's your response to the sovereign immunity of the State of Minnesota? Well, the jurisdiction that the tribal court would exercise in this case, Your Honor, would be no different, no more, than is permitted in the federal court system under an ex parte young. This is an intensive fact-finding case. We believe it's best suited in the tribal court. We believe that this court's precedent also confirms that, particularly in the API case. This is very similar to API, procedurally. The API case was brought initially in the tribal court. Is it OK if I use API? Do you understand what I'm talking about? Attorneys process an investigation. That's a Sac and Fox case out of Meskwaki Settlement. OK, that case involved, yes, they were on-reservation activities, but this was an off-reservation, non-member entity, and the court concluded that both Montana exceptions came into play in that case. But the factual situation was so extreme, this court recognized in 2010, that it was a situation where there was a tribal dispute. One faction of the tribe hired an off-reservation Montana firm that was a security firm. They came over, armed security guards, and took over the tribal center in the back of the house at the casino. So that was a very clear-cut Montana II case. But really, when you step back and take a look at the impacts of what the state DNR is doing here right now, negatively impacting wild rice, a treaty-protected resource, no question about that, Your Honor. We believe that it belongs in tribal court for that fact-finding determination. And also, once the fact-finding is complete, that the tribal court be given the opportunity to determine its own jurisdiction. At that point, the case is ready for the federal question, for the state to come into the federal court to determine whether or not the tribal court system exceeded the bounds of its jurisdiction. That's the way we see this case, Your Honor. We see it very closely, you know, to the API case. And API, of course, you know, was this court's local version, if you will, of National Farmers Union and Iowa Mutual Insurance, which requires exhaustion of tribal court remedies. It's not mandatory. And the federal question does not arise until all of the remedies to the tribal court system have been exhausted. That's what we believe needs to happen in this case, Your Honor. The state's reliance on Kodiak, this court's decision in Kodiak, is way different. Kodiak was a case, first off, where tribal court remedies were exhausted. And the ultimate conclusion was that because the subject matter of the dispute, these were oil and gas leases on individual tribal member allotments, trust allotments, was committed by Congress entirely to the federal government and there is no role for the tribal court. And the state's reliance on Kodiak, I believe, is flawed for that reason. It's way different. Another one of the cases, a Ninth Circuit case that the state relies on, this Latham, I believe it is, Lanham, Gillum, excuse me, Gillum, that was a case where individual tribal members brought suit in the Blackfeet tribal court against the state of Montana because of negligent design and maintenance of a state highway. And that was determined to be improper. In this case, what the White Earth Band and Judge DeGroat are doing, Your Honor, is the cause of action is against the individual in her official capacity for declaratory and injunctive relief and not the tort damages that the people in the Gillum case were asking for. And in fact, the Gillum case cuts against the state because footnote 8 in that we are not determining the circumstances. The Ninth Circuit specifically declined to address whether agents of a state may be sued in a tribal court. I mean, again, it doesn't support the state's position and that's what they also rely on. We believe that the district court's decision should be affirmed. There's nothing wrong with the court to sua sponte, decide an issue, particularly in a sovereign immunity type of case, if it's not covered by the parties. Sovereign immunity is a concept that can be raised. It's a jurisdictional concept that can be raised at any stage of the proceedings, even the first time on appeal. And also, the district court hears sua sponte use of that sovereign immunity as a reason to end the case at that point. I believe that what the district court was thinking is the same thing that I'm explaining right now, Your Honor, and that is that it's not yet ready for a federal question review by the district court. This is a Montana II case, Montana Exceptions II, the impacts to the, and I need to say this, we can't get anything out of the state of Minnesota. I mean, if you heard that through the state's position that they're cooperative with the tribe and they share everything, that's not the case. The state of Minnesota Department of Natural Resources has been, I would call it an adversarial relationship, and they share a lot of the territory, you know, that we have. Where we live, it's very wet. The groundwater and the surface waters communicate directly. You can't dewater a proposed trench for a pipeline and not impact the groundwater, which is very close. And again, the groundwater does not respect the boundaries of the reservation. And in this case, what we observed firsthand is that the water levels on Lower Rice Lake diminished because of the dewatering that occurred closely off. We believe that this is very consistent with the Montana II analysis. The fixation is not on the on-reservation conduct. It's on the non-members' activities that directly impact the on-reservation resources. And we believe that this is a case that, to borrow a phrase from Justice Gorsuch in a recent case, fits like a glove in the Montana II analysis. And what I'm referring to is the Cooley case that was decided recently by the U.S. Supreme Court, which relied on the Montana II analysis. Of course, in that case, it was a little bit different. But the end result could be the same, and that is the harms to the political integrity, economic security, and the health and welfare of the members of the tribe. In that case, it was a law enforcement issue. It was a law enforcement issue. What tribal law would control or be governing of the suit that's been initiated? Your Honor, it would be the rights of Menomine. The rights of Menomine is something that the Tribal Council, the governing body of the White Earth Band, consciously enacted because it is so integral to the Ojibwe culture, wild rice, Menomine, that's wild rice. That was enacted specifically by the tribal governing body to protect it. And I don't know whether Your Honors are fluent in this or not, but wild rice is a very delicate plant. The Ojibwe people originally were out in the east, and they ended up migrating because of a prophecy to go where the food grows on the water. And you'll notice, Your Honor, that our amicus support is of six wild rice tribes over in Wisconsin and Michigan, and they don't have the abundance that we do because the resources were not protected the way that we're trying to protect them. I got a couple more things I need to say here. Oh, at this stage, we don't have to prove the whole thing. All we have to prove is that jurisdiction is not plainly lacking. It's a very low threshold at this point in the proceedings before any fact-finding takes place. Again, the focus of the Montana analysis is on the non-members' conduct and activities and their effect on the reservation. It's a very fact-intensive analysis that must be resolved in the tribal court in the first instance. We believe, Your Honor, that because the Rights of the Nomen Code is going to be primarily the focus of the tribal court review, that the tribal court is best equipped, you know, to understand the significance of wild rice as well as the significance of the tribal law and will be able to orderly be able to gather the facts and develop the factual record as to the impacts to this. And it's not only quantity, it's quality, water quality. That there are other, as we cover kind of generally in our brief, the plant depends on a steady stream of clean water and it grows only in sandy-bottomed, mud-bottomed lakes and rivers that are three or four feet high, any higher than that it uproots. And so when you, when the water level goes down, it negatively impacts it. When it goes up, it negatively impacts it. I see my time's out, Your Honor. Thank you, Mr. Plouffe. Thank you. All right, Your Honor, so I think I'm just going to focus on a couple of the cases. I'm going to start with the API case. I mean, that case actually supports the State position. As we briefed, there were two different claims in API, one regarding conduct that occurred on trust property and one that occurred in a location that was undetermined. And what this court held in the API case, it said, it was a conversion claim. It said, unless that conversion occurred inside the reservation, you have no claim and then remanded for determination of where the conversion occurred. That's the holding of API. So API stands for the proposition that the Montana Part 2 exception only applies to things happening on the reservation. On HICS, again, the Appellate Use Comprehensive Recovery— Or can it apply to things that affect, that may not occur actually on, but affect what occurs in the reservation? No. If you look at the words that are used, whether it's in the Plains Commerce case or the words of Montana itself, it talks about the conduct. In Plains Commerce case, it makes clear that the inquiry is whether the conduct occurred on the reservation or whether the conduct occurred on trust lands or something like that. So it's where the conduct is occurring, which makes sense. And again, the same result would be if we had two different states, right? Things that happen in Minnesota affect Iowa. Things that happen in Wisconsin affect Minnesota. It doesn't give Minnesota the right to sue Iowa in Minnesota courts. I mean, that's just, you know, the same situation here. The fact that there may be impacts is not enough to create jurisdiction. Small point here, you know, the band came up here and talked about Lower Rice Lake. If you read through their tribal court complaint, the words Lower Rice Lake do not appear. They made no allegation that the, you know, that there was an impact on Lower Rice Lake. I will also point out to you that the Whitehorse Reservation is in the Red River Watershed. Their allegations and their complaint are all about the Mississippi Watershed. This complaint started as a usurpatory case. The bans wanted a determination that they could extend their tribal law off-reservation. That's what this case is really about. They passed this Code of Newman. And what they're purporting to do is to take a tribal legal code and apply it off-reservation on the theory that their usurpatory rights allowed them to do that. There's nothing, nothing in their complaint that there's on-reservation impacts. I think that's to the side. The three legal arguments we've made don't, aren't conditioned upon that. We're saying sovereign immunity applies, Montana applies, Hicks applies. It doesn't actually matter if there's an on-reservation impact. But they haven't pled that. Thank you. Thank you, Mr. Plummer. Thank you also.